## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAWN P. CASALE and             :
JAMES F. CASALE, t/a           :      CIVIL ACTION
THE KNIT WITH,                 :
                               :
          Plaintiffs,          :
                               :
     v.                        :
                               :      NO.  10-460
AURORA YARNS, FREDERIKKA       :
THEODORA PAYNE, and DONNA      :
MCGRANAGHAN,                   :
                               :
          Defendants.          :

## MEMORANDUM

BUCKWALTER, S. J.                                            April 7, 2010

Currently pending before the Court is the Motion for Remand by Plaintiffs Dawn and James

Casale.  For the following reasons, the Motion is granted and the case is remanded to the

Pennsylvania Court of Common Pleas for Philadelphia County.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

According to the facts set forth in Plaintiff's Complaint, Defendant Aurora Yarns ("Aurora")

supplied Plaintiff The Knit With ("TKW") with *Cashmerino* yarn between August 2004 and

January 2006.  (Compl. ¶ 12.)  These various transactions came about when Defendant Donna

McGranaghan, an independent representative for yarn wholesalers, conducted a sales call to

Plaintiff, during which she described *Cashmerino* as "a high-quality, high-cashmere-content yarn

appropriately stocked by a high-end shop which could be economically inventoried because it was

soon to be closed-out."  (Id. ¶¶ 8, 13.)  Subsequently, on July 6, 2006, TKW learned by rumor that

an unidentified handknitting yarn labeled to contain the identical fiber percentages as *Cashmerino*

had actually been found to contain no cashmere.  (Id. ¶ 15.)  Pursuant to 13 Pa.C.S. § 2609, TKW

requested that Aurora furnish a Guaranty of Compliance indicating that labeling of Aurora-sourced

wool complied with the Wool Products Labeling Act of 1939, 11 U.S.C. § 68 *et seq.*  (Id. ¶ 18.)

Defendant Frederikka Payne, the proprietor of Aurora, originally promised to furnish the Guaranty,

but subsequently expressed some reservations to Plaintiff about doing so.  (Id. ¶¶ 19-20.)

Meanwhile, TKW retained Kenneth D. Langley, a professor of materials science at the

University of Massachusetts, to ascertain the cashmere content of three "suspect" yarns (other than

*Cashmerino*) matching the fiber content of the rumored yarn.  (Id. ¶ 21.)  On July 18, 2006, Dr.

Langley's analyses found that the three "suspect" yarns had no cashmere at all.  (Id.)  By July 21,

2006, Aurora had yet to furnish the requested Guaranty and Defendant Payne expressed doubt about

her receiving the necessary verification concerning the *Cashmerino's* fiber content from her

supplying Italian manufacturer before the manufacturer's one month close on July 31st.  (Id. ¶¶ 23-

24.)  She also "expressed reticence" in requesting that the manufacturer provide this information.

(Id. ¶ 24.)

Given all of these events, TKW began to suspect whether the *Cashmerino* labeling properly

stated the cashmere content of the yarn.  (Id. ¶ 25.)  Thus, on July 24, 2006, TKW removed

*Cashmerino* from sale and submitted samples to Dr. Langley for fiber analysis, which revealed that

the yarn was spun of 7% cashmere instead of the labeled 20% cashmere.  (Id. ¶ 26.)  TKW

informed Aurora of these results, but Defendant Payne disputed Dr. Langley's reliability and

challenged TKW's intent in performing these fiber analyses.  (Id. ¶¶ 27-28.)  Although Payne

indicated that she trusted the manufacturer (Ornaghi Filati), she offered to take back TKW's

remaining inventory for her own re-sale.  (Id. ¶ 28.)  She did not agree that past purchasers of the

purportedly mis-labeled *Cashmerino* needed to know about any possible errors in the labeling. (Id.)
On August 3, 2006, Payne informed TKW that the manufacturer stood by *Cashmerino*'s labeling
and would furnish a report to prove the labeling's accuracy. (Id. ¶ 29.)

Despite the Langley report, Payne executed a Guaranty for *Cashmerino*, dated August 14,
2006, challenging TKW's integrity and good faith in testing the wool product. (Id. ¶ 30.) On
August 15, 2006, Payne and TKW initially agreed that TKW would "quietly" recall the yarn, return
remaining stock to Aurora, and forego litigation in exchange for Aurora's promise to make TKW
whole. (Id. ¶ 31.) On November 29, 2006, however, Payne stated that Ornaghi's testing reached
"the same result" found by Langley – that *Cashmerino* was spun of just 7% cashmere. (Id. ¶ 33.)
Aurora thus requested that TKW indicate to consumers that the importer and manufacturer were
participating in the recall as well. (Id.)

Via correspondence dated July 10, 2007, TKW informed Aurora of the status of its recall,
presented an itemized schedule of costs and losses incurred, and requested reimbursement of those
losses pursuant to the August 15, 2006 agreement. (Id. ¶ 34.) Aurora then issued a call tag, on
August 1, 2007, for TKW's return of all remaining *Cashmerino* product, as well as sixty labels
received from consumers during the recall. (Id. ¶ 35.) On September 1, TKW demanded that
Aurora complete "meaningful and substantial performance [to make TKW whole] by the date
certain of September 17" or the August 15, 2006 agreement would be deemed void. (Id. ¶ 36.)
Despite TKW's demand for damages totaling $19,445.70, Aurora sent TKW a check for only
$2,497.14. (Id. ¶ 37.) Because this amount was less than requested, TKW deemed the August 2006
agreement repudiated. (Id.)

On December 1, 2009, TKW brought a civil action in the Pennsylvania Court of Common

3

Pleas for Philadelphia County against Defendants Aurora Yarns, Frederikka Payne, and Donna McGranaghan.  The Complaint alleged claims against Defendants Payne and Aurora for false advertising pursuant to the Lanham Act, breach of contract for failure to supply product requested, breach of contract for breach of the duty to provide assurances, and breach of contract for repudiation of the "quiet" recall agreement.  (Compl., The Knit With v. Aurora Yarns ¶¶ 35-45, 65-88 (Phila. C.P. Dec. 1, 2009.)  Additionally, TKW claimed breach of express warranty and breach of implied warranty against Defendants Aurora, Payne, and McGranaghan.  (Id. ¶¶ 46-64.)  On December 16, 2009, Defendants Aurora and Payne removed the case to the United States District Court for the Eastern District of Pennsylvania under Civil Action Number 09-5981.  Shortly after the case was transferred to federal court, TKW filed a Motion for Remand.  On March 11, 2010, the Court granted that Motion due to Defendants' failure to comply with the unanimity rule, and returned the case to the Pennsylvania Court of Common Pleas for Philadelphia County.

While the removal and remand proceedings were occurring in the above action, current Plaintiffs Dawn and James Casale, as proprietors of TKW, filed another action in the Philadelphia County Court Common Pleas on January 8, 2010.  This Complaint alleged breaches of both an express warranty and the implied warranty of merchantability against Defendants Payne, Aurora, and McGranaghan, (Compl. ¶¶ 39-57), as well as additional claims against Defendants Aurora and Payne for breach of contract for failure to supply product requested; breach of contract for failing to provide assurances; and breach of contract for repudiation of the "quiet" recall agreement.  (Id. ¶¶ 58-82.)  On February 1, 2010, Defendants Aurora and Payne removed this action to federal court and Defendant McGranaghan provided written consent to the removal, thus prompting a new round of motions.  Defendant McGranaghan filed a Motion to Dismiss on February 9, 2010 and, in lieu of

answer, Plaintiffs filed a Motion to Remand for Improper Removal on March 3, 2010.  Defendant

McGranaghan responded on March 17, 2010 and Defendants Aurora and Payne responded on

March 18, 2010.  The Court now turns to a discussion of that pending motion.

## II.        STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the

federal court would have had original jurisdiction over the action.  28 U.S.C. § 1441(a).  A

defendant seeking removal of an action must file a petition for removal with the district court within

thirty days of plaintiff's service of the complaint upon defendant.  See 28 U.S.C. § 1446(b). "The

defendants bear the burden of establishing removal jurisdiction and compliance with all pertinent

procedural requirements."  Winnick v. Pratt, No. CIV.A.03-1612, 2003 WL 21204467, at *2 (E.D.

Pa. May 20, 2003) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

Once an action is removed, a plaintiff may challenge removal by moving to remand the case

back to state court.  Cook v. Soft Sheen Carson, Inc., No. CIV.A.08-1542, 2008 WL 4606305, at *1

(D.N.J. Oct. 15, 2008).  Remand to the state court is appropriate for:  "(1) lack of district court

subject matter jurisdiction or (2) a defect in the removal process." PAS v. Travelers Ins. Co., 7 F.3d

329, 352 (3d Cir. 1993).  Remand is mandatory and can occur at any time during the litigation if the

court determines that it lacks federal subject matter jurisdiction.  Kimmel v. DeGasperi, No.

CIV.A.00-143, 2000 WL 420639, at *1 (E.D. Pa. Apr. 7, 2000) (citing 28 U.S.C. § 1447(c)).  A

motion to remand the case on the basis of any defect in the removal procedure, however, must be

submitted within thirty days after filing of the notice of removal under section 1446(a).  28 U.S.C. §

1447(c); N. Penn Water Auth. v. Bae Sys. Aerospace Elec., Inc., No. CIV.A.04-5030, 2005 WL

1279091, at *5 (E.D. Pa. May 25, 2005).  Upon a motion to remand, "it is always the removing

party's burden to prove the propriety of removal, and any doubts about the existence of federal jurisdiction must be resolved in favor of remand." Lumbermans Mut. Cas. Co. v. Fishman, No. CIV.A.99-929, 1999 WL 744016, at *1 (E.D. Pa. Sep. 22, 1999) (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir.1992)); see also Boyer, 913 F.2d at 111 (The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand.") (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir.1987)); see also Palmer v. Univ. of Med. and Dentistry of N.J., 605 F. Supp. 2d 624, 627 (D.N.J. 2009) ("A party opposing remand must show that removal was proper.").

## III. DISCUSSION

In the current Motion, Plaintiff concedes that the removal of this case was procedurally proper, but denies that the Court has subject matter jurisdiction over the removed Complaint. Defendants respond that, on its face, the allegations of the Complaint support a finding of both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. The Court addresses each form of jurisdiction individually

### A. Whether Federal Question Jurisdiction Exists

Section 1331 states that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'aris[es] under' federal law within the meaning of § 1331 . . .if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983)). Thus, the general rule for

6

determining the existence of federal question jurisdiction is whether a federal question is presented on the face of plaintiff's well-pleaded complaint.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "The most straightforward test of whether an action presents a federal question is to determine the law from which the cause of action arises, federal or otherwise."  Club Comanche, Inc. v. Govt. of V.I., 278 F.3d 250, 259 (3d Cir. 2002).

"When reviewing the face of a complaint for federal question jurisdiction, there are two categories of cases through which a suit may 'arise under' federal law. " Grays Ferry Cogeneration P'ship v. PECO Energy Co., 998 F. Supp. 542, 549 (E.D. Pa. 1998).  First, "'[a] suit arises under the law that creates the cause of action.'" Id. (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916).  "The second is when the plaintiff's cause of action is based on state law, but a federal law that creates a cause of action is an essential component of the plaintiff's complaint."  Id.  These rules make the plaintiff the "master of the complaint" by allowing him or her to avoid federal jurisdiction by relying exclusively on state law for his or her cause of action. Caterpillar, 482 U.S. at 392; In re Comcast Cellular Telecomm. Litig., 949 F. Supp. 1193, 1198 (E.D. Pa. 1996).  A case may not be removed to federal court on the ground that the complaint gives rise to a defense under federal law.  In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 624 F. Supp. 2d 396, 414 (2009).  Nor may a defendant anticipate a federal defense as the sole basis for asserting federal subject matter jurisdiction.  In re Comcast, 949 F. Supp. at 1198.

The artful pleading doctrine is one exception to the well-pleaded complaint rule.  County of Del. v. Gov't Sys., Inc., 230 F. Supp. 2d 592, 597 (E.D. Pa. 2002). "The artful pleading doctrine permits a court to look beyond the plaintiff's allegations to the substance of the plaintiff's complaint."  Id.  The artful pleading doctrine allows federal courts to exercise jurisdiction, even

when a federal claim does not appear on the face of the plaintiff's complaint, if: "(1) federal law has completely preempted the state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not pleaded in the plaintiff's complaint, is nonetheless both intrinsic and central to the plaintiff's cause of action." Guckin v. Nagle, 259 F. Supp. 2d 406, 410 (E.D. Pa. 2003). Under the former circumstance, the "artful pleading" doctrine applies to state claims that are completely preempted by federal law. See Rivet v. Regions Bank of La., 522 U.S. 470, 475-476 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim"); Caterpillar, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). Under the latter circumstance, the exception is applicable only "when a plaintiff has 'artfully' pled her complaint to avoid stating the federal law claim her complaint is necessarily based upon," *i.e.*, to "disguise its federal nature." Smith v. Team Dodge-Kia, No. CIV.A.04-4092, 2005 WL 1400384, at *2 (E.D. Pa. Jun. 14, 2005) (quotations omitted).

Defendants argue that the current Complaint presents a federal question on its face that is central and intrinsic to Plaintiffs' cause of action. Specifically, they note that in Count Four, Plaintiffs sued for "Breach of Contract Duty to Provide Assurances" based on the Wool Products Labeling Act of 1939, 15 U.S.C. § 68g, and that any adjudication of this cause of action will require a determination as to the rights and liabilities under that federal statute. (Defs. Payne and Aurora's Resp. Mot. Remand 14-15.) Plaintiffs' effort to rest their demand for assurances on Pennsylvania statute 13 Pa.C.S. § 2609, according to Defendants, is nothing more than an effort to artfully plead irrelevant state law and avoid the allegation of a federal question. Because no Pennsylvania law

8

expressly regulates the fiber content of yarns or provides for assurances thereof, consideration of whether Defendants breached a duty to provide assurances is a question of federal law.

This argument is misplaced. For purposes of federal question jurisdiction, "'[a]n action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.'" Jayme v. MCI Corp., 328 Fed. Appx. 768, 770 (3d Cir. 2008) (quoting Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974)). "[T]he federal issue must be more than an element in the state law claim to establish federal question jurisdiction." Krause v. Philadelphia Soul, No. CIV.A.09-1132, 2009 WL 1175625, at *3 (E.D. Pa. Apr. 30, 2009) (citing Empire Healthcare Assur., 547 U.S. at 701).

In this case, while Plaintiffs may cite the Wool Products Labeling Act as a federal statutory predicate for their Complaint and as the reason for originally requesting some type of guaranty, they have not "alleged private causes of action against [Defendants] that are either expressly or impliedly *created by* [the Wool Products Labeling Act.]" Grays Ferry, 998 F. Supp. at 549-50 (E.D. Pa. 1998). The Wool Products Labeling Act simply relieves a retailer, who possesses such a guaranty, from liability for mislabeled products;[1] it does not create a private cause of action in favor of a retailer

---

[1] Defendant McGranaghan's Response Brief also asserts that the Complaint alleges that if the guaranty provided by Aurora is fraudulent, then such a finding will serve as a judicial determination rendering Aurora "guilty of an unfair method of competition, and an unfair and deceptive act or practice, in commerce within the meaning of the Federal Trade Commission Act." (Def. McGranaghan's Resp. Mot. for Remand 16 (citing Compl. pars. 29-30, 73.) While this argument appears to be legally correct, Aurora's potential liability for unfair methods of competition – enforceable only by the Federal Trade Commission – is irrelevant to whether the Court has subject matter jurisdiction over the breach of warranty action at hand.

against a distributor who failed to provide one.[2]  Rather, Plaintiffs properly rest their breach of

contract claim on 13 Pa.C.S. § 2609, which expressly provides that when a party to a contract has

reasonable grounds for insecurity with respect to the performance of the contract, that party may

demand, in writing, adequate assurance of due performance.  13 PA. CONS. STAT. § 2609(a).[3]

_____

[2]  The relevant provision of the Wool Products Labeling Act states:

> (a) Avoidance of liability; requirements
>
> No person shall be guilty under section 68a of this title if he establishes a guaranty received in good faith signed by and containing the name and address of the person residing in the United States by whom the wool product guaranteed was manufactured and/or from whom it was received, that said wool product is not misbranded under the provisions of this subchapter.
>
> Said guaranty shall be either (1) a separate guaranty specifically designating the wool product guaranteed, in which case it may be on the invoice or other paper relating to said wool product; or (2) a continuing guaranty filed with the Commission applicable to all wool products handled by a guarantor in such form as the Commission by rules and regulations may prescribe.
>
> (b) Furnishing false guaranty
>
> Any person who furnishes a false guaranty, except a person relying upon a guaranty to the same effect received in good faith signed by and containing the name and address of the person residing in the United States by whom the wool product guaranteed was manufactured and/or from whom it was received, with reason to believe the wool product falsely guaranteed may be introduced, sold, transported, or distributed in commerce, is guilty of an unfair method of competition, and an unfair and deceptive act or practice, in commerce within the meaning of the Federal Trade Commission Act [15 U.S.C.A. § 41 et seq.].

15 U.S.C. § 68g

[3]  This section states:

> A contract for sale imposes an obligation on each party that the expectation of the other of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance

Failure of the receiving party to provide such assurance can constitute repudiation of the contract.

Id. at § 2609(d).[4]  Simply put, Plaintiffs' claims against Defendants sound primarily in traditional contract state law and the Wool Products Labeling Act is neither central nor intrinsic to adjudication of this cause of action.  Moreover, nothing within the Wool Products Labeling Act suggests that federal law has so occupied this field as to make Plaintiffs' state law claim untenable.  Accordingly, the Court declines to find any basis for asserting federal question jurisdiction over this case.

## B.  Whether Diversity Jurisdiction Exists

Defendants next claim that federal subject matter jurisdiction exists under 28 U.S.C. § 1332(a), which states that:

> district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).  A natural person is deemed to be a citizen of the state where she is domiciled. Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 181-82 (3d Cir. 2008) (citing Gilbert v. David, 235 U.S. 561, 569 (1915)).  A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.  Id. (citing 28 U.S.C. § 1332(c)).  Under the

_____

for which he has not already received the agreed return.

13 PA. CONS. STAT. § 2609(a) (1984).

[4]  "After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract."  13 PA. CONS. STAT. § 2609(d) (1984).

"complete diversity" rule, all plaintiffs must be diverse from all defendants. <u>Id.</u> at 183.; <u>see also</u> <u>Sabric v. Lockheed Martin</u>, No. CIV.A.09-2237, 2010 WL 569573, at *1 (M.D. Pa. Feb. 10, 2010) (citing <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978)).

In the present case, Plaintiffs Dawn and James Casale are both citizens of Pennsylvania. (Compl. ¶¶ 4-5.) Defendants Aurora and Payne are citizens of California, while Defendant McGranaghan is a citizen of Pennsylvania. (<u>Id.</u> ¶¶ 6-8.) Given that both Plaintiffs and one Defendant are citizens of the same state, complete diversity, pursuant to 28 U.S.C. § 1332(a), does not exist.

To overcome this obstacle, Defendants contend that Defendant McGranaghan has been fraudulently joined. Under this doctrine, "'[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.'" <u>In re Briscoe</u>, 448 F.3d 201, 217 (3d Cir. 2006) (quoting <u>Batoff v. State Farm Ins. Co.</u>, 977 F.2d 848, 851-52 (3d Cir. 1992)). Because the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant," a district court may disregard the citizenship of any fraudulently joined defendant when assessing the propriety of removal premised on diversity jurisdiction. <u>In re Avandia Mktg.</u>, 624 F. Supp. 2d at 411 (quotations omitted). "'Fraudulent joinder' is a term of art – a demonstration of outright fraud or bad faith is not necessary to render a party fraudulently joined." <u>Lopez v. Home Depot, Inc.</u>, No. CIV.A.08-1020, 2008 WL 2856393, at *2 (E.D. Pa. Jul 22, 2008). Rather, as set forth by the Third Circuit, joinder is fraudulent where "'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" <u>In re Briscoe</u>, 448 F.3d at

12

216 (quoting <u>Abels v. State Farm Fire & Cas. Co.</u>, 770 F.2d 26, 32 (3d Cir. 1985)).  The removing party carries a "heavy burden of persuasion" in making a showing of fraudulent joinder.  <u>Steel Valley Auth. v. Union Switch & Signal Div.</u>, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987); <u>see</u> <u>also</u> <u>Crawford v. Allstate</u>, No. CIV.A.08-5483, 2009 WL 2778851, at *2 (E.D. Pa. Aug. 31, 2009).

A district court may base a finding of fraudulent joinder on factual or legal grounds.  <u>In re</u> <u>Avandia Mktg.</u>, 624 F. Supp. 2d at 411-12.  Joinder is legally fraudulent if the court determines that a claim is "wholly insubstantial and frivolous" in light of the relevant case law.  <u>Batoff</u>, 977 F.2d at 852.  "[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses."  <u>Boyer</u>, 913 F.2d at 113 (citations omitted).  Moreover, a district court's examination of the law is not as exacting as review on a motion to dismiss and the court must be careful not to delve too deep into substantive matters.  <u>Id.</u> at 852.  "'Simply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action does not mean that the defendant's joinder was fraudulent.'"  <u>City of Philadelphia v. Hotels.com</u>, No. CIV.A.05-4391, 2005 WL 2573146, at *3 (E.D. Pa. Oct. 11, 2005) (quoting <u>Lyall v. Airtran Airlines, Inc.</u>, 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000)).

When evaluating whether a defendant's joinder is factually fraudulent, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed, must assume as true all of the factual allegations of the complaint, and must resolve all uncertainties as to the current state of controlling law in favor of plaintiff.  <u>Batoff</u>, 977 F.2d at 851-52.  A district court need not "blindly . . . accept whatever plaintiffs may say no matter how incredible or how contrary

the overwhelming weight of the evidence." <u>Reeser v. NGK Metals Corp.</u>, 247 F. Supp. 2d 626, 629 (E.D. Pa. 2003). Thus, "limited piercing of the allegations to discover fraudulent joinder" may be appropriate. <u>Boyer</u>, 913 F.2d at 112. Contested issues of substantive fact, however, must be resolved in plaintiff's favor and the district court may not step "from the threshold jurisdictional issues into a decision on the merits." <u>Id.</u> at 111-12.

In this case, Removing Defendants claim that McGranaghan was fraudulently joined in Plaintiffs' Complaint on two grounds. First, they allege that the claim against her is barred by the applicable statute of limitations. Second, they assert that Plaintiffs have stated no colorable breach of warranty claim against her.[5] The Court individually addresses each argument.

### 1.    <u>Statute of Limitations</u>

It is well-established that a timeliness defense may support a fraudulent joinder claim where the statute of limitations unquestionably precludes the possibility of relief. <u>Brown v. Jevic</u>, 575 F.3d 322, 327 (3d Cir. 2009); <u>see</u> <u>also</u> <u>Crutchley v. I-Flow</u>, No. CIV.A.09-35, 2009 WL 650358, at *2 (E.D. Pa. Mar. 12, 2009). Thus, "[i]f a district court can determine, as a matter of law, that all claims against a defendant are time-barred, then that defendant can be considered fraudulently joined and its citizenship disregarded for purposes of diversity jurisdiction." <u>McCleary v. Leibensperger Transp. Sales, Inc.</u>, No. CIV.A.09-1350, 2009 WL 1109296, at *2 (E.D. Pa. Apr. 24,

---

[5] In <u>The Knit With v. Aurora Yarns</u>, Civ. A. No. 09-5981, Defendants claimed that McGranaghan was fraudulently joined because Plaintiffs had no good faith intention of pursuing a claim against her and had no factual premise on which to rest any claim. The Court fully addressed and dismissed this argument in our decision on that matter. <u>See</u> <u>The Knit With v. Aurora Yarns</u>, No. CIV.A.09-5981, 2010 WL 844739, at *4-6 (E.D. Pa. Mar. 11, 2010). Although Defendants do not appear to re-raise that argument here, to the extent that they do, the Court rejects it for the identical reasons set forth in the previous opinion.

2009).  As noted above, to decide a statute of limitations argument under the guise of a fraudulent

joinder claim, a court must assume as true all factual allegations of the complaint, resolve all doubts

in favor of remand, and "'if there is even a possibility that a state court would find that the

complaint states a cause of action against any one of the resident defendants, the federal court must

find that joinder was proper and remand the case to state court.'"  In re Briscoe, 448 F.3d at 217

(citing Batoff, 997 F.3d at 851-52).

Nonetheless, the Third Circuit, recognizing the unique nature of the statute of limitations

defense, has acknowledged that limited inquiry into matters beyond the pleadings may be

permissible, indeed advisable.  It explained that:

> in reviewing a limitations question, we see no reason to preclude a district court from
> a limited consideration of reliable evidence that the defendant may proffer to support
> the removal.  Such evidence may be found in the record from prior proceedings,
> which firmly establishes the accrual date for the plaintiff's claim, or in other relevant
> matters that are properly subject to judicial notice.  Such a limited look outside the
> pleadings does not risk crossing the line between a proper threshold jurisdictional
> inquiry and an improper decision on the merits.  After all, a statute of limitations
> defense is not a merits-based defense to the plaintiff's case.

Id. at 220.  The Court went on to reason that, "[t]he policy judgment that stale claims should not see

the light of day, when viewed in combination with a defendant's statutory right to remove an action

that falls within the original jurisdiction of a federal court, counsels against confining a district court

strictly to the pleading allegations when it assesses a fraudulent joinder/statute of limitations

question."  Id.  Thus, it found that a "limited look" beyond the pleadings would not risk usurping

jurisdiction over cases properly belonging in state court.  Id.  "To hold otherwise would run the risk

that we condone the practice of asserting baseless, stale claims against non-diverse defendants for

the sole purpose of thwarting a defendant's right to remove a case that falls within the original

jurisdiction of a federal court." Id.

In the present case, Plaintiffs rest their entire case against Defendant McGranaghan on certain alleged misrepresentations she made regarding *Cashmerino* during a sales call to TKW. Specifically, the Complaint states that, "[b]etween December 26, 2005 and January 30, 2006, and on a date more certainly known to the defendant, Mrs. McGranaghan conducted a sales call to TKW during which call she described *Cashmerino* as a high-quality, high-cashmere-content yarn appropriately stocked by a high-end shop which could be economically inventoried because it was soon to be closed out." (Compl. ¶ 13.) Based on those alleged misrepresentations, Plaintiffs claimed that McGranaghan breached an express warranty and the implied warranty of merchantability, both of which have four-year statutes of limitations under Pennsylvania law. See 13 Pa. Cons. Stat. § 2725(a) (1984); 42 Pa. Cons. Stat. § 5525(2) (2004).

In effort to prove that the breach of warranty claims are untimely, Defendant McGranaghan cites to her Affidavit of January 26, 2010 – filed in connection with her Motion to Dismiss the Complaint in Civil Action 09-5981 and incorporated by reference in her Response to the Motion to Remand in this case. (See Def. McGranaghan's Resp. Mot. Remand 13.) In that Affidavit, McGranaghan attests, "[o]n December 7, 2005 I made my usual December sales call to the Knit With. That was my first visit to the Knit With repping the Aurora line. . . . I know I went to the Knit With on December 7, 2005 because I keep records of all my sales calls. I also keep my automobile mileage for my tax records. . . . It is obvious I went to Knit With on December 7, 2005 and at no other time in December 2005 or January 2006." (Def. McGranaghan Mot. to Dismiss, The Knit With v. Aurora Yarns, Civ. A. No. 09-5981, Aff. of Donna McGranaghan ("McGranaghan Aff.") ¶¶ 21, 23, Jan. 26, 2010.) McGranaghan attaches to this Affidavit a copy of her calendar for December

16

2005 and January 2006 reflecting only one visit to TKW on December 7, 2006 at 10:00 a.m. (McGranaghan Aff., Ex. 1.)  She goes on to argue that taking a "limited look outside the pleadings," as permitted by the Third Circuit, the Court must find that McGranaghan's Affidavit, which is unrebutted by any contrary evidence, establishes that she made her sales call to TKW on December 7, 2006.  See Faucett v. Ingersoll-Rand Mining & Mach. Co., 960 F.2d 653, 654 (7th Cir. 1992) (diversity-defeating defendant's uncontradicted affidavit negating liability is sufficient to establish fraudulent joinder); Knebel v. Wal-Mart Stores, Inc., No. CIV.A.09-262, 2009 WL 3124769, at *2 (S.D. Ill. Sep. 24, 2009) (uncontradicted affidavit of defendant indicating that he was not present on day of plaintiff's injury could be considered for purposes of fraudulent joinder inquiry); see also Britton v. Whittmanhart, Inc., No. CIV.A.09-1593, 2009 WL 1855325, at *5 n.4 (E.D. Pa. Jun. 25, 2009) ("[a] court can consider reliable evidence the defendant submits to support the propriety of removal for indicia of fraudulent joinder.").  Applying the four-year statute of limitations, McGranaghan thus argues that the current breach of warranty claims against her – filed on January 8, 2010 – are time-barred.

While the Court takes judicial notice of McGranaghan's uncontradicted affidavit in this case, we note that the fundamental premise of her statute of limitations argument is flawed. McGranaghan assumes that Plaintiffs had four years from the date of the purported misrepresentations to bring their breach of warranty claims.  Under Pennsylvania law, however, a cause of action for breach of warranty accrues when "tender of delivery is made," irrespective of the "aggrieved party's lack of knowledge of the breach."  13 PA. CONS. STAT. § 2725(a)-(b).  "In other words, the statute of limitations will begin to run on the date of sale of the product."  Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 831 (E.D. Pa. 2001) (holding that the

statute of limitations for warranty claims begins at the time of the tender or sale of the allegedly defective product); see also McCracken v. Ford Motor Co., 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008).  In this case, both the Complaint and several exhibits before the Court show that the sale of the yarn in question was made on January 30, 2006.  (Compl. ¶¶ 11-14; Pls.' Mot to Remand, Decl. of James Casale, Ex. 2 (Mar. 3, 2010.)  The date of McGranaghan's alleged misrepresentations is of no moment.  Accordingly, Plaintiffs had until January 30, 2010 to file the current breach of warranty action.  Given that the Complaint was filed on January 8, 2010, it was well within the applicable statute of limitations.  As such, the Court must conclude that Defendants' timeliness argument does not permit a finding of fraudulent joinder.

### 2.      Viability of Breach of Warranty Claim Against McGranaghan

Alternatively, Defendants argue that Defendant McGranaghan has been fraudulently joined because Plaintiffs have stated no colorable claim against her.  Specifically, they argue that McGranaghan is nothing more than an independent sales representative for Defendant Aurora who has no contractual privity with Plaintiffs.  Absent that contractual privity, they claim that McGranaghan has no liability to Plaintiffs under a breach of warranty theory.

Pennsylvania law holds that "[u]nless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ."[6] 13 PA. CONS. STAT. § 2314(a) (1984).  Goods are "merchantable" only when they, *inter alia*,  "pass without objection in the trade under the contract description," "are fit

---

[6]  Plaintiffs also allege a claim of breach of express warranty against Defendant McGranaghan. As the fraudulent joinder inquiry requires only that the Court determine whether the Complaint states at least one colorable claim against McGranaghan, we limit our inquiry to the implied warranty claim.

18

for the ordinary purposes for which such goods are used," and "are adequately contained, packaged, and labeled as the agreement may require." 13 Pa. Cons. Stat. § 2314(b) (1984); see also Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc., 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009). A "merchant" is defined as a person who either: "(1) deals in goods of the kind; or (2) otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge of skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." 13 Pa. Cons. Stat. § 2104 (1984).

While various states differ, it is well-established in Pennsylvania that privity of contract is not required for recovery on a breach of warranty claim. Williams v. Penn Power Co., 467 A.2d 811, 814-18 (Pa. 1983); Spagnol Enter., Inc. v. Digital Equip. Corp., 568 A.2d 948, 951 (Pa. Super. Ct. 1989); Montgomery County v. MicroVote Corp., 152 F. Supp. 2d 784, 799 (E.D. Pa. 2001), aff'd, 320 F.3d 440 (3d Cir. 2003) see also Teledyne Techs., Inc. v. Freedom Forge Corp., No. CIV.A.003398, 2002 WL 748898, at *4 (Pa. Com. Pl. Apr. 19, 2002) (noting that jurisdictions differ as to the requirement of privity of contract in breach of warranty claims). To that end, a dealer or intermediary that acts as a conduit for a manufacturer in a transaction resulting in the sale of the manufacturer's product could be held liable to the buyer for breach of warranty when the product fails to perform adequately. Moscatiello v. Pittsburgh Contractors Equip. Co., 595 A.2d 1190, 1194 (Pa. Super. Ct. 1991); see also Am. Paper & Pulp Co. v. Denenberg, 132 F. Supp. 802, 806 (E.D. Pa. 1955) (holding that a corporation that purchased paper from a paper broker, who had purchased it from the manufacturer, could maintain an action against the broker for breach of warranty where paper supplied did not comply with standards set by samples furnished to

corporation by broker), <u>modified</u> 233 F.2d 610 (3d Cir. 1956).

In the present case, the Complaint alleges that Defendant McGranaghan "holds herself out to be an independent representative for yarn wholesalers, including Aurora." (Compl. ¶ 8.) Sometime in December 2005 or January 2006, she conducted a sales call to TKW, during which she described *Cashmerino* as "a high-quality, high-cashmere-content yarn appropriately stocked by a high-end shop which could be economically inventoried because it was soon to be closed-out." (Compl. ¶¶ 13, 42.) Subsequently, Defendant Payne bolstered McGranaghan's representations and "extolled the 20% cashmere content of the yarn and explained the close-out was occurring because the manufacturer had discontinued the yarn after several years of production." (<u>Id.</u> ¶ 14.) Ultimately, the sale of *Cashmerino* was consummated by Defendant McGranaghan and was followed by delivery by Aurora. (<u>Id.</u> ¶ 53.) According to the Declaration of Plaintiff James Casale, submitted in conjunction with the Motion for Remand, Defendant Payne specifically claimed that she and Aurora "played no role in specifying the *Cashmerino*'s fiber content, in the manufacture and labeling of the yarn, or in the sale of the yarn to TKW." (Pls.' Mot for Remand, Decl. of James Casale ("Casale Decl.") ¶ 9, Mar. 3, 2010.) Rather, she stated that her role in supplying *Cashmerino* to TKW was "limited to filling an order received from her sales rep [*i.e.* McGranaghan] and shipping the goods." (<u>Id.</u>)

In light of such allegations, the Court finds that Plaintiffs state a colorable claim for breach of implied warranty against Defendant McGranaghan. The Complaint clearly alleges that McGranaghan engages in the business of selling handknitting yarns for a living and has specialized knowledge in the area. Moreover, she acted as an intermediary in securing the contract to supply Aurora yarns to TKW and her co-Defendant Payne specifically implicated her as the person

responsible for consummating the sale. Whether she was actually an agent of Aurora and whether the proper cause of action is against Aurora alone are questions to be resolved at a later stage of the case. The fact remains that colorable claims have been asserted against Defendant McGranaghan and those claims are neither wholly insubstantial nor frivolous under the relevant and settled case law. The Court may not now step from this threshold jurisdictional issue into a decision on the merits under the guise of deciding whether the joinder was fraudulent. Boyer, 913 F.2d at 112; see also Hotels.com, 2005 WL 2573146, at *3 (quoting Lyall, 109 F. Supp. 2d at 367-68). Accordingly, we deem McGranaghan not fraudulently joined.

Defendants multiple contrary arguments are unavailing. First, Defendants cite to numerous cases which hold that only a seller may be held liable for breach of the implied warranty of merchantability and that an agent contracting on behalf of the principal cannot be so liable. (Defs. Aurora and Payne's Resp. Mot. for Remand 4-5.) None of these cases, however, apply Pennsylvania law, which, as noted above, differs from other jurisdictions in many respects. Defendants cite no Pennsylvania jurisprudence to suggest that McGranaghan may not be liable under an implied warranty as a merchant engaged in the sale of the allegedly defective yarn. Second, Defendants argue that McGranaghan's purported statements that the yarn had a "high-cashmere-content" was merely opinion or puffery that cannot constitute an affirmation of fact on which a warranty may be based. (Id. at 8-9.) Such affirmations of fact, however, are relevant only to causes of action for breach of express warranty and have no bearing on implied warranties. See Zawadzki v. Ethicon, Inc., No. CIV.A.926453, 1994 WL 77350, at *2 (E.D. Pa. Mar. 11, 1994) ("[i]mplied warranties . . . are created by operation of law without any affirmative action by the parties to the transaction."). Third, Defendants contend that Plaintiff Casale's Declaration that

McGranaghan was involved in the sale does not render her a warrantor. This argument, however, fails to recognize that the Complaint specifically implicates McGranaghan as the seller of the goods at issue. Factual development of that allegation is not properly resolved during a Motion for Remand. Finally, Defendants argue that the Complaint states no claim under Pennsylvania pleading standards. (Defs. Aurora and Payne's Resp. Mot for Remand 9.) As noted above, however, a district court's examination of the law is not as exacting as review on a motion to dismiss and the court cannot – as Defendants ask us to do – delve too deeply into substantive matters.[7]

In short, because there is a viable possibility that the state court will find that the complaint states a cause of action against McGranaghan, this Court must deem joinder proper.[8] Boyer, 913 F2d at 111. With McGranaghan remaining as a Defendant in the case, complete diversity among the parties is impossible, leaving the Court with no subject matter jurisdiction over this case under 28 U.S.C. § 1332.

---

[7] The Court is aware that McGranaghan has a pending Motion to Dismiss on the grounds that: (1) the Complaint pleads all allegations by a fictitious name that lacks legal capacity; and (2) federal law exempts all "cashmere" wool at issue in this matter. (See Def. McGranaghan's Mot. Dismiss 4-9.) That Motion has no bearing, however, on our fraudulent joinder inquiry. Rather, "[w]hen a Rule 12(b)(6) motion is joined with a motion to remand on the ground of fraudulent joinder, the court should consider the claim of fraudulent joinder first since it is a jurisdictional issue." 5B WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 n.39 (3d ed. 2009); see also Consol. Energy Inc. v. Berkshire Hathaway, Inc., 252 Fed Appx. 481, 483 (3d Cir. 2007) ("[s]ince the case was improperly removed due to the failure of unanimity, it would be unfair for [defendant] to benefit from the wrongful removal by having its motion to dismiss decided in a federal forum.").

[8] Defendants Payne and Aurora engage in a lengthy argument to establish that the amount in controversy requirement of section 1332 has been met. Having already found that the complete diversity requirement was not satisfied, however, the Court need not reach this issue.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court has neither federal question nor diversity jurisdiction over this case.  Absent some form of subject matter jurisdiction, removal to federal court was improper.  Accordingly, the Court must grant Plaintiffs's Motion for Remand and return this case to the Pennsylvania Court of Common Pleas for Philadelphia County.

An appropriate order follows.